IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:20-CV-562-FL

| | | |
|---|---|---|
| EVELYN POWELL and DR. SHIQUITA BLUE, | ) ) ) | |
| Plaintiffs, | ) ) | |
| | ) | ORDER |
| v. | ) ) | |
| NASH EDGECOMBE ECONOMIC DEVELOPMENT, INC., | ) ) | |
| Defendant. | ) ) ) | |

This matter is before the court on defendant's motion to dismiss (DE 8) and plaintiffs' motion to amend complaint (DE 15). The issues raised have been briefed fully, and in this posture, are ripe for ruling. For the following reasons, defendant's motion to dismiss is granted and plaintiffs' motion to amend is denied.

## STATEMENT OF THE CASE

Plaintiffs commenced this action in Nash County Superior Court on September 25, 2020, alleging discrimination, retaliation, and hostile work environment, in violation of the Age Discrimination and Employment Act of 1967, as amended ("ADEA"), 29 U.S.C. § 621 et seq. and Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e et seq., and wrongful termination in violation of public policy. Plaintiffs seek reinstatement, compensatory and punitive damages, costs, and attorneys' fees.

Defendant removed the case to this court on October 26, 2020. Shortly thereafter, defendant filed the instant motion to dismiss plaintiffs' complaint for failure to state a claim and

on res judicata grounds, relying upon a memorandum of law and attachments thereto, including: 1) proposed second amended complaint filed in <u>Wilson et al. v. Nash Edgecombe Economic Development, Inc. et al.</u>, No. 5:19-CV-322 (E.D.N.C.) ("the related action"); 2) the court's September 16, 2020, order in the related action; and 3) a May 1, 2017, article in the Rocky Mount Telegram.  Plaintiffs responded in opposition to the motion on December 6, 2020, and defendant replied in support on January 5, 2021.

On February 1, 2021, plaintiffs filed the instant motion to amend complaint.  Defendant responded in opposition on February 22, 2021, relying upon: 1) plaintiffs' Notices of Right to Sue, 2) plaintiffs' Notices of Charges of Discrimination, and 3) plaintiffs' Equal Employment Opportunity Commission ("EEOC") Charges.

STATEMENT OF FACTS

The facts alleged in the complaint may be summarized as follows.  Defendant is a non-profit organization that provides grants and services to low-income and moderate-income families residing in Nash, Edgecombe, and Wilson counties.  (Compl. (DE 1-1) ¶¶ 4,7).  Defendant employed plaintiff Dr. Shiquita Blue ("Blue") as family engagement and community partnership manager and plaintiff Evelyn Powell ("Powell") as education manager.

1.      Ginell Rogers

During her tenure as defendant's executive director, Ginell Rogers ("Rogers") allegedly engaged in a "pattern of discriminatory behavior." (<u>Id.</u> ¶¶ 26, 44).  Specifically, she allegedly terminated six employees who were between 46 and 53 years old, while hiring 13 employees who were between 23 and 39 years old.  (<u>Id.</u> ¶¶ 45, 48).  Moreover, Rogers was quoted in The Rocky Mount Telegram, on May 1, 2017, stating "I don't see a lot of the younger generation within

management here and that her goal is to eventually have a more younger [sic] presence in [defendant] NEED." (Id. ¶ 49).

Plaintiffs also allege Rogers suspended without pay two female employees when their letters of qualification expired; yet, she allowed two male employees to continue working after their letters of qualification expired, and she allowed Dr. Elton Powell to begin working before he obtained a letter of qualification. (Id. ¶¶ 58-60). Moreover, Rogers allegedly denied a female employee's request for vacation, while approving a male employee's request for vacation that was submitted around the same time period. (Id. ¶ 61).

Finally, plaintiffs allege that Rogers created a "hostile workplace environment." (Id. ¶ 70). In particular, Rogers allegedly "would always stand on the outside of the door when Plaintiff Blue was having meetings with her staff and then would come in and question what Plaintiff Blue said to her staff." (Id. ¶ 72). On one occasion, Rogers allegedly demanded that plaintiff Blue provide education information to the Office of Head Start, without the help of receptionist, and directed plaintiff Blue to notify the Office of Head Start by email that she would not be able to provide the information by the requested deadline. (Id. ¶ 71). When plaintiff Blue asked Rogers requestions regarding the contents of the email, Rogers allegedly screamed at her. (Id.). Plaintiff Blue "felt very intimidated by [ ] Rogers as she continued to stand over Plaintiff Blue as she wrote the email." (Id.).

2.      Termination

On August 21, 2019, when plaintiffs were between 46 and 63 years old, defendant terminated plaintiffs, citing "inefficiency, negligence, or incompetence", as well as "failure to obey supervisor's instructions and discourteous act towards co-workers" as reasons for their termination. (Id. ¶¶ 5-6, 27-31,45). Defendant also cited a list of tasks that plaintiffs purportedly

failed to complete, when plaintiffs allegedly completed those tasks.  (Id. ¶¶ 34-35).  Plaintiffs allege that plaintiff Blue was an "exemplary" employee, who did not receive a negative performance evaluation until Rogers appointed herself as the interim Head Start Director in 2019.  (Id. ¶ 21).  Likewise, they allege that plaintiff Powell was an "outstanding" employee, who never received a negative performance evaluation.  (Id. ¶ 22, 24).

Plaintiffs appealed their terminations to the chairman of defendant's board of directors, who authorized a special committee to preside over plaintiffs' appeal hearing.  (Id. ¶¶ 36, 38).  Following hearing, the special committee recommended upholding the terminations due to "unsatisfactory job performance."  (Id. ¶ 38).

Additional allegations pertinent to defendant's motion to dismiss and plaintiffs' motion to amend will be discussed below.

## COURT'S DISCUSSION

A.    Motion to Dismiss

1.    Standard of Review

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "Factual allegations must be enough to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555.  In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff,"  but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments."

Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).

2. Analysis

Defendant moves to dismiss plaintiffs' age discrimination, gender discrimination, hostile work environment, retaliation, and wrongful termination claims. The court addresses these claims with respect to each plaintiff, in turn below.

a. Plaintiff Blue

i. Age Discrimination

Plaintiff Blue alleges that she was terminated because of her age. The ADEA provides that "[i]t shall be unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a). To state a claim under the ADEA, plaintiff must allege plausible facts to satisfy the elements of a cause of action created by that statute, that is, that defendant "discharge[d] [her] or otherwise discriminate[d]" against them "because of [her] age." 29 U.S.C. § 623(a) (emphasis added); McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin., 780 F.3d 582, 586 (4th Cir. 2015). The elements of a prima facie claim under the ADEA are: "(1) at the time of her firing, she was at least 40 years of age; (2) she was qualified for the job and performing in accordance with her employer's legitimate expectations; (3) her employer nonetheless discharged her; and (4) a substantially younger individual with comparable qualifications replaced her." Westmoreland v. TWC Admin. LLC, 924 F.3d 718, 725 (4th Cir. 2019). Importantly, an employee must allege "that age was the 'but-for' cause of the challenged employer decision." Id. (citing Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 177–78 (2009)).

Plaintiff Blue fails to state a claim for age discrimination because she fails to plausibly allege the fourth element, that a substantially younger individual with comparable qualifications replaced her. In briefing, plaintiffs indicate that plaintiff Blue "was replaced by consultants that were personal friends of Ms. Rogers. The consultants were under the age of 40." (Mem. (DE 10) at 9). However, this allegation is absent from the complaint, and a plaintiff may not amend complaint through argument in briefing. See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 449 (4th Cir. 2011) ("[S]tatements by counsel that raise new facts constitute matters beyond the pleadings and cannot be considered on a Rule 12(b)(6) motion."). Where plaintiff Blue fails to plausibly allege a prima facie case, plaintiff Blue's arguments regarding pretext are unavailing. See King v. Rumsfeld, 328 F.3d 145, 150 (4th Cir. 2003) ("These allegations, as King recognizes, go to the issue of whether appellee's explanation of King's discharge is pretextual. But, since King never established a prima facie case as to his discrimination claims, appellee is under no duty to supply an explanation for King's discharge.").

Moreover, Rogers's statements, memorialized in article published March 1, 2017, do not support plaintiff Blue's ADEA claim, where plaintiff Blue fails to allege a nexus between the statements and her termination. See E.E.O.C. v. Clay Printing Co., 955 F.2d 936, 941 (4th Cir. 1992) (finding no discriminatory intent where the "alleged discriminatory statements were not directly related to any particular person, employment decision or pattern of decision making" and "no nexus exist[ed] between the alleged discriminatory statements and any of the employment decisions") (emphasis in original). Indeed, not only are Roger's statements devoid of any reference to plaintiff Blue, her statements were published March 1, 2017, approximately two years before plaintiff Blue was discharged. (Compl. (DE 1-1) ¶ 6). Importantly, the United States Court of Appeals for the Fourth Circuit has concluded that statements made approximately one to two

years prior to an employment decision are too remote to have plausibly influenced the employment decision.  See Birkbeck v. Marvel Lighting Corp., 30 F.3d 507, 511-512 (4th Cir. 1994).

Moreover, the Fourth Circuit has repeatedly held that statements reflecting a desire to appeal to a younger generation, or to benefit from that generation's insights, such as those made by Rogers, (see Article (DE 9-3) at 1)[1], are not probative of discriminatory intent.  See id. (statement that "there comes a time when we have to make way for younger people" "creates no inference of age bias"); Clay Printing, 955 F.2d at 942 (statements indicating need to "attract newer, younger people" and "young blood" were "not probative of age discrimination or a discriminatory purpose"); Smith v. Flax, 618 F.2d 1062, 1066 (4th Cir. 1980) (finding "statements . . . that the Division's future lay in its young Ph.D's, and that all employees at some time reached the peak in efficiency" to be "truisms" that did not indicate a discriminatory purpose).

Finally, the fact that Rogers allegedly terminated six employees who were between 46 and 53 years old, while hiring 13 employees who were between 23 and 39 years old during her tenure as executive director, (see Compl. (DE 1-1) ¶¶ 45, 48), does not allow the court to reasonably infer that age discrimination motivated plaintiff Blue's termination.  Birkbeck, 30 F.3d at 511 (indicating that samples of between five and thirteen are too small to have any predictive value); Vaughan v. Metrahealth Companies, Inc., 145 F.3d 197, 203 (4th Cir. 1998) ("We have repeatedly noted that statistical evidence is inherently malleable and that it is thus subject to careful scrutiny.").

---

[1]     Although plaintiffs do not attach the article to their pleadings, "courts may consider a document that the defendant attaches to its motion to dismiss if the document 'was integral to and explicitly relied on in the complaint and if the plaintiff[] do[es] not challenge its authenticity.'" CACI Int'l, Inc. v. St. Paul Fire & Marine Ins. Co., 566 F.3d 150, 154 (4th Cir. 2009) (citation omitted).  Here, the article is integral to plaintiffs' complaint, (see Compl. (DE 1-1) ¶ 49), and plaintiffs do not challenge the article's authenticity.

In sum, plaintiff Blue fails to state a claim for age discrimination, and defendant's motion to dismiss must be granted in this part.

ii.     Gender Discrimination

Plaintiff Blue alleges that she was terminated because of her gender.  Title VII makes it unlawful for employers "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2.  See McCleary-Evans, 780 F.3d at 584-85; Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010).  The elements of a prima facie case of discrimination under Title VII are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class."  Coleman, 626 F.3d at 190 (citing White v. BFI Waste Servs., LLC, 375 F.3d 288, 295 (4th Cir. 2004)); Haulbrook v. Michelin N. Am., 252 F.3d 696, 702 (4th Cir. 2001).

Plaintiff Blue fails to state a claim for gender discrimination, where she fails to plausibly allege different treatment from similarly situated employees outside of the protected class.  Indeed, plaintiff Blue does not allege that she was replaced someone outside of the protected class or that a comparator was disciplined differently than her.   In briefing, plaintiff Blue relies on her allegations that defendant: 1) hired Dr. Elton Powell over a more qualified female applicant; 2) suspended two female employees without pay when their letters of qualification expired, while allowing two male employees to continue working when their letters of qualification expired; 3) allowed Dr. Elton Powell to begin working before he obtained a qualification letter; and 4) denied a female employee's request for vacation leave, while approving a male employee's request for

vacation leave that was submitted around the same time period.  (Mem. (DE 10) at 11).  However, the small number of examples cited, which are unrelated to plaintiff Blue, are insufficient to raise plaintiff Blue's age discrimination claim above a speculative level.  See Warch v. Ohio Cas. Ins. Co., 435 F.3d 510, 521 (4th Cir. 2006) ("Any suggestion that the two older employees who left [defendant] around the same time as [an employee's] alleged comments were victims of age discrimination is pure speculation and, without more evidence, simply cannot create an inference of illegal age discrimination."); Vaughan, 145 F.3d at 203 ("[A] sample of seven employees, . . . is too small for reliable analysis" of a pattern or by statistics).

In sum, plaintiff Blue fails to state a claim for gender discrimination, and defendant's motion to dismiss must be granted in this part.

iii.      Hostile Work Environment

Plaintiff Blue alleges that she was subjected to a hostile work environment due to her age and sex.  Title VII makes it unlawful for employers "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."   42 U.S.C. § 2000e-2.  "Since an employee's work environment is a term or condition of employment, Title VII creates a hostile working environment cause of action." E.E.O.C. v. Sunbelt Rentals, Inc., 521 F.3d 306, 313 (4th Cir. 2008).  To state a hostile work environment claim, a claimant must demonstrate that the alleged conduct: 1) was unwelcome; 2) resulted because of her gender or age; 3) was sufficiently severe or pervasive to alter the conditions of her employment; and 4) was imputable to her employer."  Boyer-Liberto v. Fountainebleau Corp., 786 F.3d 264, 277 (4th Cir. 2015) (en banc); Causey v. Balog, 162 F.3d 795, 801 n.2 (4th

Cir. 1998) (assuming without deciding that a hostile work environment claim under the ADEA exists where neither party disputed its existence).[2]

Under element two, "an employee is harassed or otherwise discriminated against 'because of' his or her gender [or age] if, 'but for' the employee's gender [or age], he or she would not have been the victim of the discrimination." Ziskie v. Mineta, 547 F.3d 220, 226 (4th Cir. 2008). A plaintiff "may prove sex-based discrimination in the workplace even though she is not subjected to sexual advances or propositions," but can succeed only by showing that she "is the individual target of open hostility because of her sex." Id.

Element three has "has both subjective and objective components." Ocheltree v. Scollon Prods., Inc., 335 F.3d 325, 333 (4th Cir. 2003) (en banc). Whether the environment is objectively hostile or abusive is "judged from the perspective of a reasonable person in the plaintiff's position." Boyer-Liberto, 786 F.3d at 277 (citing Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998)). "That determination is made by looking at all the circumstances, which may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)).

Here, plaintiff Blue alleges that she was 1) "unfairly and harshly criticized for not legitimate reason [sic]"; 2) "unfairly blamed for the poor work of others"; 3) "denied appropriate training or instruction and, when seeking out instruction or training being chastised for doing so"; 4) "yelled at and subjected to threatening leering"; 5) "blocked from attending important meetings"; 6) "issued false letters of reprimand and having his [sic] personnel file papered with

---

[2]       Likewise, where the parties in the present action do not dispute the existence of a hostile work environment claim under the ADEA, the court assumes without deciding that one exists.

false documentation"; and 7) "unfairly and unreasonably embarrassed in front of colleagues so as to become ostracized in the office." (Compl. (DE 1-1) ¶ 69). Plaintiff Blue also alleges that Rogers created a hostile work environment by denying leave requests and by "stand[ing] on the outside of the door when Plaintiff Blue was having meetings with her staff and then [coming] in and question[ing] what Plaintiff Blue said to her staff." (Id. ¶¶ 70, 72). Finally, plaintiff Blue alleges that Rogers required her to provide education information to Head Start, without the help of a receptionist, and alleges that Rogers "screamed at her" when plaintiff Blue questioned why she, rather than Rogers, had to request additional time from Head Start to complete the task. (Id. ¶ 71).

The foregoing allegations fail to state a claim for hostile work environment. First, plaintiff Blue fails to plausibly allege that the alleged conduct occurred because of her gender or age. Hawkins v. PepsiCo, Inc., 203 F.3d 274, 280–81 (4th Cir. 2000) ("[Plaintiff] accuses Price of such things as regarding her as 'not of the caliber' to be a CSC manager, rejecting her input at meetings, making fun of her personality type, and failing to give her a gift at a party. But these sorts of disagreements and misunderstandings are ordinary occurrences in a workplace setting. We decline to impute a racial character to them based simply on [plaintiff's] conjecture.").

Second, even assuming the alleged conduct occurred because of plaintiff Blue's gender or age, these allegations, taken together, are not sufficiently severe or pervasive to alter the conditions of plaintiff's employment. As the Fourth Circuit has explained:

> Workplaces are not always harmonious locales, and even incidents that would objectively give rise to bruised or wounded feelings will not on that account satisfy the severe or pervasive standard. Some rolling with the punches is a fact of workplace life. Thus, complaints premised on nothing more than rude treatment by coworkers, callous behavior by one's superiors, or a routine difference of opinion and personality conflict with one's supervisor, are not actionable under Title VII.

E.E.O.C. v. Sunbelt Rentals, Inc., 521 F.3d 306, 315–16 (4th Cir. 2008) (internal quotations omitted).

Plaintiff Blue relies upon E.E.O.C. v. Fairbrook Med. Clinic, P.A., 609 F.3d 320, 330 (4th Cir. 2010), for the proposition that harassment can actionable when it is humiliating and demeaning, even if it is not physically threatening. Fairbrook Med. Clinic is inapposite. In that case, the harassment included use of "sex-specific and derogatory terms . . . to demean women", "explicit or implicit proposals of sexual activity," and "talk[ ] about female body parts . . . in graphic terms." Fairbrook Medical Clinic, 609 F.3d at 327. Such gender specific language is absent here, rendering any inference that the alleged conduct occurred because of plaintiff Blue's gender speculative at best.

In sum, plaintiff Blue fails to state a claim for hostile work environment, and defendant's motion to dismiss must be granted in this part.

iv.    Retaliation

Plaintiff Blue alleges that defendant retaliated against her because of her age and gender. As relevant here, Title VII's Opposition Clause makes it unlawful "for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a). Likewise, the ADEA states that "[i]t shall be unlawful for an employer to discriminate against any of his employees . . . because such individual . . . has opposed any practice made unlawful by this section, or because such individual . . . testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter." 29 U.S.C. § 623(d). In light of the linguistic similarities between Title VII and the ADEA, the court will apply case law on Title VII retaliation claims to plaintiff Blue's gender-based and age-based retaliation claims. See Birkbeck, 30 F.3d at 510 (holding that Title VII and the ADEA exhibit similar language and are indeed "statutory kin"); see also Blistein v. St. John's Coll., 860 F. Supp. 256, 268 (D. Md. 1994) ("[T]he non-retaliation provisions of Title

VII and the ADEA are nearly identical; therefore this Court believes that the Title VII retaliation decisions of the Fourth Circuit are applicable.").

The Fourth Circuit has "made clear that [courts] should also interpret 'unlawful employment practice' broadly." DeMasters v. Carilion Clinic, 796 F.3d 409, 417 (4th Cir. 2015). Accordingly, "an employee is protected when she opposes not only employment actions actually unlawful under Title VII but also employment actions she reasonably believes to be unlawful, and the Title VII violation to which the oppositional communication is directed may be complete, or it may be in progress." Id. (internal quotations omitted).

In determining whether a plaintiff engaged in protected oppositional activity, "the touchstone is whether the plaintiff's course of conduct as a whole (1) communicates to her employer a belief that the employer has engaged in a form of employment discrimination and (2) concerns subject matter that is actually unlawful under Title VII or that the employee reasonably believes to be unlawful." Id. at 418 (emphasis in original) (internal quotations omitted). At bottom, the employer must be aware "of an employee action that he understood or should have understood to be opposition against a Title VII violation." Strothers, 895 F.3d at 336. (internal citation omitted).

Here, plaintiff Blue fails to state a claim for retaliation, where she fails to plausibly allege that she engaged in protected oppositional activity. Plaintiff Blue alleges that "staff" reported to the Head Start Region IV Office that Rogers altered many of the documents that were requested by the regional team. (Compl. (DE 1-1) ¶ 80). Moreover, plaintiff Blue alleges that she informed the Head Start Region IV Office that defendant did not have enough teachers to open the education centers in August 2019 because Rogers did not fill those positions in time. (Id. ¶ 82). Plaintiff

Blue alleges that she was terminated in retaliation for reporting the foregoing information and being a "whistleblower." (Id. ¶ 86).

However, protected oppositional activity must "bring attention to an employer's discriminatory activities." Laughlin v. Metro. Washington Airports Auth., 149 F.3d 253, 259 (4th Cir. 1998) (emphasis added). The conduct plaintiff Blue allegedly reported to the Head Start Region IV Office —alteration of documents and failure to fill positions on time—was not discriminatory conduct. Importantly, "Title VII is not a general bad acts statute, [ ] and it does not prohibit private employers from retaliating against an employee based on her opposition to [ ] practices that are outside the scope of Title VII." Bonds v. Leavitt, 629 F.3d 369, 384 (4th Cir. 2011); Lightner v. City of Wilmington, N.C., 545 F.3d 260, 264 (4th Cir. 2008) (Title VII is not a general whistleblower statute.).

In briefing, plaintiff Blue argues she was retaliated against because reported Rogers's intent to discriminate against her on the basis of her age and sex to the special committee that presided over her appeal hearing, citing paragraph 37 of the complaint. (See Mem. (DE 10) at 14). However, such allegations are absent from plaintiff Blue's complaint, including paragraph 37 thereof. As stated in more detail herein, plaintiff Blue cannot amend her complaint through arguments made in briefing. See E.I. du Pont de Nemours, 637 F.3d at 449.

Moreover, although plaintiff Blue's asserts in a conclusory fashion that she "opposed defendants' [sic] unlawful violation of her rights under the law, to include but not limited to Title VII and the ADEA" and that "Defendant NEED's actions were in retaliation for plaintiffs having engaged in protected activities, namely asserting their Title VII, FMLA and ADEA rights", "a plaintiff's obligation to provide the grounds of [her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

do." Twombly, 550 U.S. at 555 (internal quotations omitted). Accordingly, plaintiff Blue fails to state a claim for retaliation.

To the extent plaintiff Blue seeks to assert a retaliation claim under North Carolina Whistleblower Protection Act, such claim also fails, where plaintiff Blue does not allege that defendant is a state employer. See N.C. Gen. Stat. §§ 126-84, 126-85; see also Johnson v. Forsyth Cty., 227 N.C. App. 276, 277 (2013) (Individuals who are not state employees "[are] not entitled to protection under the provisions of the North Carolina Whistleblower Act."). Likewise, plaintiff Blue fails to state a claim for retaliation under the Whistleblower Protection Act, where plaintiff does not allege that defendant is a federal employer. See 5 U.S.C. § 1221; see also Bunce v. Comput. Scis. Corp., 113 F. Supp. 3d 234, 237 (D.D.C. 2015) ("[A]n individual remedy for retaliation for whistleblowing is provided by federal law in appropriate cases . . . This remedy, however, is available only to 'an employee, former employee, or applicant for employment' of the United States.") (citing 5 U.S.C. §§ 1221(a); 2105(a)).[3]

In sum, plaintiff Blue fails to state a claim for retaliation, and defendant's motion to dismiss must be granted in this part.

v.      Wrongful Termination

Plaintiff Blue alleges that she was wrongfully terminated because of her age and gender. Under North Carolina law, an employee-at-will may bring a cause of action against his employer for terminating him in violation of public policy. Kurtzman v. Applied Analytical Indus., Inc., 347 N.C. 329, 331 (1997). The North Carolina Equal Employment Practices Act provides "[i]t is the public policy of this State to protect and safeguard the right and opportunity of all persons to

---

[3]      Plaintiff Blue does not cite any cases, nor is the court aware of any, supporting her argument that a private entity's employees may sue under the North Carolina Whistleblower Protection Act or the Whistleblower Protection Act merely because the private entity receives state or federal funding.

seek, obtain and hold employment without discrimination or abridgement on account of race, religion, color, national origin, age, sex or handicap by employers which regularly employ 15 or more employees."   N.C. Gen. Stat. § 143-422.2(a); <u>see also</u> <u>Bigelow v. Town of Chapel Hill</u>, 227 N.C. App. 1, 13 (2013) ("A retaliatory firing based upon an employee's filing of a claim of discrimination in the workplace clearly violates public policy and could support a wrongful discharge claim.").

The court applies the same standards of proof for a wrongful termination as it does under Title VII.  <u>N. Carolina Dep't of Corr. v. Gibson</u>, 308 N.C. 131, 136 (1983) ("[W]e look to federal decisions for guidance in establishing evidentiary standards and principles of law to be applied in discrimination cases.").  Moreover, with some exceptions, where Title VII and the ADEA exhibit similar language and are indeed "statutory kin," <u>Birkbeck</u>, 30 F.3d at 510, the standards applicable to an ADEA claim also govern claims of age discrimination under NCEEPA.  <u>See</u> <u>Hughes v. Bledsole</u>, 48 F.3d 1376, 1383 (4th Cir. 1995).   Accordingly, for the same reasons that the court grants defendant's motion to dismiss plaintiff Blue's Title VII and ADEA claims, the court grants defendant's motion to dismiss plaintiff Blue's wrongful termination claim.

b.      Plaintiff Powell

Defendant argues that plaintiff Powell's claims for wrongful termination, age discrimination, gender discrimination, retaliation, and hostile work environment must be dismissed pursuant to res judicata, in light of this court's September 18, 2020, ruling in the related case.  The doctrine of res judicata "bars a party from suing on a claim that has already been litigated to a final judgment by that party or such party's privies and precludes the assertion by such parties of any legal theory, cause of action, or defense which could have been asserted in that action." <u>Ohio Valley Envtl. Coal. v. Aracoma Coal Co.</u>, 556 F.3d 177, 210 (4th Cir. 2009).  For res judicata

to prevent a party from raising a claim, three elements must be present: (1) "the prior judgment was final and on the merits, and rendered by a court of competent jurisdiction in accordance with the requirements of due process" ; (2) "the parties are identical, or in privity, in the two actions"; (3) "the claims in the second matter are based upon the same cause of action involved in the earlier proceeding" — i.e., the claims "arise out of the same transaction or series of transactions, or the same core of operative facts." Duckett v. Fuller, 819 F.3d 740, 744 (4th Cir. 2016) (internal quotations omitted).

Turning to the first element, in the related action, the court dismissed with prejudice plaintiff Powell's claims for wrongful termination, age discrimination, gender discrimination, retaliation, and hostile work environment and denied plaintiff Powell's motion to amend these claims on futility grounds. See Wilson v. Nash Edgecombe Econ. Dev., Inc., No. 5:19-CV-322-FL, 2020 WL 5594538, at **28-29 (E.D.N.C. Sept. 18, 2020). The court's ruling in the related action constitutes a final judgment on the merits. See Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 399 (1981) (A "dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a "judgment on the merits.") (citation omitted); see Kenny v. Quigg, 820 F.2d 665, 669 (4th Cir. 1987) ("[A] voluntary dismissal with prejudice is a valid, final judgment on the merits."); see also Jacobs v. Venali, Inc., 596 F. Supp. 2d 906, 914 (D. Md. 2009) ("It is well established that dismissals with prejudice—including those resulting from settlement agreements or consent decrees—are treated as final judgments on the merits for purposes of res judicata.").

Under the second element, the parties are identical, as plaintiff Powell is a plaintiff and defendant is a defendant in the related action. See Wilson, 2020 WL 5594538, at *1. Finally, plaintiff Powell's claims in this action and the prior action arise out of the same core operative

facts. Indeed, the complaint plaintiff Powell filed in this action is nearly identical to the proposed amended complaint she filed in the related action. Compare (Compl. (DE 1-1) ¶¶ 20-138) with (Prop. Am. Compl. (DE 9-1) ¶¶ 353-462). As a result, the court finds that plaintiff Powell's claims are barred by res judicata, and they must be dismissed with prejudice.[4]

Plaintiff Powell argues that the claims she asserts in this action could not be asserted in the related action because they are based upon discrete events that occurred well after the events underlying the plaintiffs' claims in the related action. Plaintiff Powell's argument is unpersuasive, where she in fact asserted these claims in the related action. The court dismissed those claims with prejudice for failure to state a claim and denied motion to amend on futility grounds. See Wilson, 2020 WL 5594538, at **28-29. Plaintiff Powell appears to conflate the court's September 18, 2020, ruling in the related action with respect to Blue's proposed claims, with its ruling regarding plaintiff Powell's claims. Specifically, the court denied the motion to add Blue as a plaintiff in the related action, finding that joinder was improper under Rule 20(a), where Blue's proposed claims were based upon discrete events that occurred well after the events underlying the other plaintiffs' claims. See id. at *23. This ruling did not apply to plaintiff Powell, whose claims were dismissed with prejudice for failure to state a claim.

In sum, plaintiff Powell's claims for wrongful termination, age discrimination, gender discrimination, retaliation, and hostile work environment must be dismissed with prejudice on res judicata grounds.

B.      Motion to Amend

---

[4]      "Although a motion pursuant to Rule 12(b)(6) invites an inquiry into the legal sufficiency of the complaint, not an analysis of potential defenses to the claims set forth therein, dismissal nevertheless is appropriate when the face of the complaint clearly reveals the existence of a meritorious affirmative defense." Occupy Columbia v. Haley, 738 F.3d 107, 116 (4th Cir. 2013) (quoting Brockington v. Boykins, 637 F.3d 503, 506 (4th Cir. 2011) ).

As an initial matter, the court addresses whether plaintiffs may amend their complaint as a matter of course. According to plaintiffs, "[p]ursuant to Federal Rule of Civil Procedure 15(a), a party may amend its pleadings once as a matter of course at any time before a responsive pleading is served." (Mem. (DE 16) at 3). Because defendant filed a motion to dismiss, rather than a responsive pleading, plaintiffs argue that Rule 15(a) allows them to file their amended complaint as a matter of course, without leave of court or the opposing party's consent. (See id.).

Plaintiffs misconstrue Rule 15(a), which provides:

> A party may amend its pleading once as a matter of course within:
>> (A) 21 days after serving it, or
>> (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading <u>or 21 days after service of a motion under Rule 12(b)</u>, (e), or (f), whichever is earlier.
> In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave.

Fed. R. Civ. P. 15(a) (emphasis added). Here, defendant filed a motion to dismiss under Rule 12(b)(6) on November 16, 2020. Thus, under Rule 15(a), the deadline for plaintiffs to amend their complaint as a matter of course expired 21 days later, on December 7, 2020. Because plaintiffs moved to amend complaint well after that date, leave of court or the opposing party's consent is required. Defendant opposes plaintiffs' motion to amend, so the court turns to the standard for granting leave to amend.

"The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "In the absence of any apparent or declared reason–such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.–the leave sought should, as the rules require, be 'freely given.'" <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962). With respect to futility, the court may deny leave to amend "if

the proposed amended complaint fails to state a claim under the applicable rules and accompanying standards." Katyle v. Penn Nat. Gaming, Inc., 637 F.3d 462, 471 (4th Cir. 2011).

1. Plaintiff Powell

As stated in more detail herein, the court dismisses plaintiff Powell's claims with prejudice, on res judicata grounds. Therefore, that part of the instant motion to amend, seeking to amend plaintiff Powell's claims, is denied as moot.

2. Plaintiff Blue

Plaintiff Blue seeks to amend complaint to add allegations in support of claims for retaliation; age discrimination; gender discrimination; and negligent hiring, retention, and supervision. (Id. ¶¶ 139-156). The court addresses these allegations, in turn below. In the interest of judicial economy, the court incorporates by reference its earlier discussion of legal principles and standards that apply to the following proposed claims.

a. Retaliation

In proposed amended complaint, plaintiff Blue alleges that defendant retaliated against her, in part, because she told the special committee that presided over her appeal hearing about Rogers's intent to discriminate against her on the basis of age and sex. (Prop. Am. Compl. (DE 15-1) ¶¶ 80-82). Defendant argues that plaintiff Blue failed to exhaust her administrative remedies with respect to the foregoing allegations.

Before a plaintiff may file suit under Title VII or the ADEA, she is required to file a charge of discrimination with the EEOC. See 42 U.S.C. § 2000e–5(f)(1) (Title VII); 29 U.S.C. § 626(d) (ADEA). "The EEOC charge defines the scope of the plaintiff's right to institute a civil suit." Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 132 (4th Cir. 2002). This is because "the goals of providing notice and an opportunity for an agency response would be undermined . . . if a plaintiff

could raise claims in litigation that did not appear in his EEOC charge." Sydnor v. Fairfax Cty., Va., 681 F.3d 591, 593 (4th Cir. 2012).

On the other hand, "the exhaustion requirement should not become a tripwire for hapless plaintiffs." Id. at 594. Thus, "administrative charge of discrimination does not strictly limit a . . . suit which may follow." Id. Instead, "claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent lawsuit." Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir. 1996).

Under this standard, the Fourth Circuit has held that a "plaintiff's claim generally will be barred if his charge alleges discrimination on one basis—such as race—and he introduces another basis in formal litigation—such as sex." Chacko v. Patuxent Inst., 429 F.3d 505, 509 (4th Cir. 2005) (citations omitted). Similarly, "[a] claim will also typically be barred if the administrative charge alleges one type of discrimination—such as discriminatory failure to promote—and the claim encompasses another type—such as discrimination in pay and benefits." Id.

Here, plaintiff Blue left the "retaliation" box unchecked on her EEOC Charge. (See Notice of Charge (DE 17-2) at 1).[5] Moreover, the only allegations in plaintiff Blue's EEOC Charge, related to retaliation, include: 1) that she informed the Head Start Region IV Office that defendant could not open education centers in August 2019 because Rogers failed to fill approximately 20 required job vacancies; 2) that "staff" reported to the Head Start Region IV Office that Rogers altered may of the documents that were requested by the regional team; and 3) and as result, the

---

[5]    Although plaintiffs do not attach their EEOC charges to their pleadings, "courts may consider a document that the defendant attaches to its motion to dismiss if the document 'was integral to and explicitly relied on in the complaint and if the plaintiff[] do[es] not challenge its authenticity.'" CACI Int'l, 566 F.3d at 154 (citation omitted). Here, the EEOC charges are integral to plaintiffs' complaint, which references their filings with the EEOC, (see Compl. (DE 1-1) ¶ 18), and plaintiffs do not challenge their authenticity.

reasons given for Blue's termination are merely a pretext to her becoming a whistleblower.  (EEOC Charge (DE 17-2) at 7-8).

Alleging retaliation on the basis of "whistleblower status" does not exhaust administrative remedies for retaliation claims on the basis of age or gender.   Cf. Chacko, 429 F.3d at 509 (A "plaintiff's claim generally will be barred if his charge alleges discrimination on one basis—such as race—and he introduces another basis in formal litigation—such as sex.").  Indeed, a reasonable investigation of the reports that plaintiff Blue allegedly made to the Head Start Agency Region IV Office, regarding Rogers's alteration of documents and failure to fill requisite positions, would not have uncovered the fact that plaintiff Blue was allegedly retaliated against for reporting gender and age discrimination to the special committee that presided over her appeals hearing.

Therefore, plaintiff failed to exhaust administrative remedies with respect to her retaliation claim, and her motion to amend must be denied in this part as futile.

### 2.    Gender Discrimination

In proposed amended complaint, plaintiff Blue alleges that Mr. Ernest Dickens ("Dickens"), the parent involvement coordinator, was responsible also for "prepar[ing] a power point presentation using sign-up sheets and evaluations for the training" yet "he was not reprimanded or terminated by defendant."  (Prop. Am. Compl. (DE 15-1) ¶ 36).  Plaintiff Blue's termination letter allegedly cited her purported failure to prepare a power point presentation using sign-up sheets and evaluations as basis for her termination, along with her purported failure to "develop and implement a plan for the Head Start Personnel to meet performance standards for eligibility recruitment, selection, enrollment and attendance"; "provide pre-service training to the employees and . . . to articulate and implement the performance standards"; "prepare a power point

for the 'What is NEED' session"; "obey supervisors instructions"; and refrain from making a "discourteous act towards co-workers." (Id.).

Importantly, plaintiff Blue alleges no facts about Dickens, except that he is a parent involvement coordinator, which leaves the court to speculate as to whether he and plaintiff Blue are similarly situated. As a result, the bald fact that he was responsible for preparing a power point based upon sign-up sheets and evaluations, alone, is not sufficient to create an inference of discriminatory discharge of plaintiff Blue. See, e.g., McCleary-Evans, 780 F.3d at 586 ("Only speculation can fill the gaps in [the] complaint -- speculation as to why two 'non-Black candidates' were selected to fill the positions instead of [the plaintiff]. While the allegation that non-Black decisionmakers hired non-Black applicants instead of the plaintiff is <u>consistent</u> with discrimination, it does not alone support a <u>reasonable inference</u> that the decisionmakers were motivated by bias."). Accordingly, plaintiff Blue's motion to amend must be denied in this part as futile.

3.      Age Discrimination

In proposed amended complaint, plaintiff Blue alleges that Rogers hired her personal friend Tanya Dennis, who was under the age of 40, to perform plaintiff Blue's duties after terminating her. (Prop. Am. Compl. (DE 15-1) ¶ 26). Plaintiff alleges no other facts about Tanya Dennis, leaving the court to speculate as to whether plaintiff Blue and Tanya Dennis were similarly situated.[6] See, e.g., McCleary-Evans, 780 F.3d at 586. ("[Plaintiff] can only speculate that the persons hired were not better qualified, or did not perform better during their interviews, or were not better suited based on experience and personality for the positions."). Therefore, plaintiff Blue's motion to amend is denied in this part on futility grounds.

---

[6]      In another section of the proposed amended complaint, plaintiff Blue alleges that Tanya Dennis was a "policy board member" and a consultant, who provided feedback to plaintiffs. (Prop. Am. Compl. (DE 15-1) ¶¶ 35-36).

####### 4. Negligent Hiring, Retention, and Supervision

In plaintiff Blue's proposed amended complaint, she alleges a state law claim for negligent hiring, retention, and supervision. Where jurisdiction in this matter is based upon federal question jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367, it is appropriate to consider whether continued exercise of jurisdiction over plaintiff Blue's state law claims is warranted. See Arbaugh v. Y&H Corp., 546 U.S. 500, 506 (2006) (citing Fed. R. Civ. P. 12(b)(1), 12(h)(3)). "A district court may decline to exercise supplemental jurisdiction over a pendent state law claim if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ." 28 U.S.C. § 1367(c)(3). "Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966).

The court has concluded that plaintiff Blue's ADEA and Title VII claims are futile. As the court has dismissed all claims over which it has original jurisdiction, it declines to exercise supplemental jurisdiction over plaintiff Blue's remaining state law claim.

## CONCLUSION

Based on the foregoing, defendant's motion to dismiss (DE 8) is GRANTED, and plaintiffs' motion to amend (DE 15) is DENIED. The clerk is DIRECTED to close this case.

SO ORDERED, this the 3rd day of May, 2021.


_____
LOUISE W. FLANAGAN
United States District Judge